UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SECURITIES AND EXHCHANGE          :
COMMISSION,
                                  :

                 Plaintiff,        :          05 Civ. 2192 (WHP)

                                  :
        -against-
                                  :          MEMORANDUM & ORDER

NORTHSHORE ASSET                  :
MANAGEMENT et al.,
                                  :

                 Defendants.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM H. PAULEY III, District Judge:

        The Securities and Exchange Commission (the "SEC") filed this action against

Northshore Asset Management, LLC, Ardent Research Partners L.P., Ardent Research Partners,

Ltd., Saldutti Capital Management, L.P. (collectively "Northshore"), and several individual

defendants on February 16, 2005. The SEC alleged violations of the Investment Advisers Act,

15 U.S.C. § 80b et seq., the Securities Exchange Act of 1934, 15 U.S.C. § 78 et seq., and the

Securities Act of 1933, 15 U.S.C. § 77 et seq. The case was assigned to Senior District Judge

Richard Owen, and on the day it was filed, the SEC sought emergency relief including the

appointment of Arthur Steinberg (the "Receiver") as receiver for Northshore (the "March 2005

Injunction Order"). Judge Owen granted the SEC's application.

        The Receiver and his counsel, Kaye Scholer LLP ("Kaye Scholer"), now seek

fees of $591,771.22 and reimbursement of expenses of $30,997.01 for the period between March

1, 2008 and December 31, 2008. The current application follows seven prior fee applications to

Judge Owen seeking more than $11 million in fees and expenses.  For the following reasons, the motion is granted in part and denied in part.

BACKGROUND

On February 22, 2008, this action and twenty-eight related cases were reassigned from Judge Owen to this Court.  By Order dated March 3, 2008, this Court scheduled a status conference with the parties.  At that March 6, 2008 conference, the Receiver estimated that he and Kaye Scholer had received more than $10 million from Northshore's estate.  His very first application alone sought $2.8 million and payment for the work of 74 attorneys and paraprofessionals, including at least 7 partners and 32 associates at Kaye Scholer.

The following day, this Court issued an order (the "March 7 Order") vacating Judge Owen's interim compensation order and suspending further disbursements to the Receiver or Kaye Scholer.  The March 7 Order also required the Receiver and Kaye Scholer to, inter alia, file a schedule of all payments they had received from the estate and a statement of all funds received or disbursed by the estate during the receivership.

The Receiver's report disclosed that he and Kaye Scholer had billed $10,646,303 in fees and $539,852 in expenses from the inception of the case and that $10,463,573 had been paid.  At the time Mr. Steinberg was appointed, Northshore's estate consisted in part of $15.4 million in cash and readily saleable securities on deposit in its accounts.  However, the report revealed that the Receiver had collected only $2.4 million more through his own efforts.  Further, while the case was three years old, the Receiver had distributed just $2.76 million to victims.

As with orders in other enforcement proceedings, Judge Owen's compensation order obligated the SEC to review the Receiver's bills while providing for the payment of 80% of requested fees and 100% of expenses without Court approval.  This might have worked if the

SEC fulfilled its obligation.  However, on questioning by this Court, the SEC conceded that it did not review all of the Receiver's bills and never objected to any of the Receiver's semi-annual applications to Judge Owen seeking a judicial imprimatur on prior withdrawals.  While Judge Owen relied justifiably on the SEC to discharge its review obligation, the agency was asleep at the switch.  Thus, the possibilities for abuse were limited only by the size of the estate.

Sadly, it appears that Northshore's investors would have been better off if the Receiver had simply distributed the $15.4 million on deposit and promptly wound down the affairs of the receivership estate.

As a consequence of these revelations, this Court directed the SEC to audit all fees and expenses billed and paid without meaningful review through February 29, 2008.  Following an audit, the SEC recommended in April 2008 that the Receiver and Kaye Scholer disgorge $4,964,000.

After lengthy negotiations, Kaye Scholer agreed to disgorge $3,348,255 in fees and expenses and forego compensation for certain accrued fees and expenses through February 29, 2008 (the "May 2009 Stipulation").  The May 2009 Stipulation provides that the Receiver and Kaye Scholer can file applications with the Court for fees and expenses for services rendered after February 29, 2008.  Pursuant to the May 2009 Stipulation, any requested fees would be subject to the following deductions agreed to by the SEC, the Receiver, and Kaye Scholer: (1) 10% of all attorney time; (2) 100% of all timed billed pertaining to Startech Environmental Corporation ("Startech") and Circle Trust Corporation ("Circle Trust"); (3) 72% of all time billed in connection with fee application preparation; (4) 75% of all expenses attributable to LexisNexis or Westlaw research; (5) 100% of  time billed by librarian or clerical staff; (6) 100% of time billed by attorneys who billed less than thirty hours in a twelve month calendar year; (7)

100% of all attorney non-productive travel time; and (8) 100% of all time related to the March 7 Order, the SEC's audit and subsequent stipulation. These exquisite details—like the pinpoint 72% reduction for fee applications—are the sublime product of thirteen months of negotiations among cadres of lawyers over attorney's fees.

According to the Receiver and Kaye Scholer, these discounts aggregate to an approximately $453,611 deduction from the current application. However, over $273,000 of that deduction relates to the Receiver and Kaye Scholer's efforts in connection with two entites— Startech and Circle Trust—that the May 2009 Stipulation provides may be the subject of a separate fee application.

The current application seeks $591,771.22 in fees and reimbursement of $30,997.01 in expenses for the period between March 1, 2008 and December 31, 2008.[1] The majority of the fees relate to litigation against individual defendants ($256,930.52), drafting and implementing a distribution plan ($123,755.94), and case administration ($58,272.80). With respect to the litigation against individuals, the Receiver and Kaye Scholer prepared for the trial of defendant Francis Saldutti, participated in two days of that trial,[2] and negotiated a settlement with Saldutti and another defendant, Robert Wildeman. The hours expended on these activities, before the 10% reduction, total 438.95 hours. As for implementation of a distribution plan, the Receiver and Kaye Scholer spent 207.26 hours (before the 10% reduction) preparing applications for and completing a third interim distribution in September 2008. The Receiver and Kaye Scholer also prepared a distribution plan and application to this Court to distribute the Startech

---

[1] On October 13, 2008, the Receiver resigned as a partner of Kaye Scholer and became a partner of King & Spalding, LLP. This application does not include the Receiver's fees for the period after his departure from Kaye Scholer.

[2] During the second day of the trial, Saldutti agreed to settle the claims against him brought by the SEC and the Receiver.

shares to investors. As for case administration, the only explanation provided for the 120.64 hours expended is that the Receiver and Kaye Scholer communicated with the SEC, investors, and creditors. The Receiver and Kaye Scholer also seek $8,110.42 for the preparation of this fee application, pursuant to the May 2009 Stipulation which allows for compensation of 28% of time billed in connection with fee application preparation.

Judge Owen's March 2005 Injunction Order allowed compensation of $500/hour for receivership services and $695/hour for legal services. Beginning with the Receiver's second application for compensation, the Receiver allocated his time according to a formula—60% at the receiver rate and 40% at the lawyer rate—because he claimed it "would be difficult to allocate between the two categories of services." However, the present application does not indicate that the Receiver's time was allocated using the 60/40 formula. In addition, beginning with his third application for compensation, the Receiver's billing rate for legal services increased steadily to $865/hour in the current application. While Judge Owen approved previous fee applications with billing rates greater than $695/hour for legal services, the Receiver never sought explicit Court approval for a higher rate. Moreover, those higher rates were not disclosed on the face of the applications, and would have been evident only if someone scrutinized the voluminous print-outs attached to the applications. Finally, the March 2005 Injunction Order provided for reasonable fees and expenses for all persons engaged by the Receiver to assist him without specifying any rates. In this application, Kaye Scholer's attorney billing rates range from $475 to $865/hour. The billing rate for a Kaye Scholer paralegal is $230/hour.

Characteristically, the SEC does not oppose the Receiver's fee application. This Court wonders who should guard the guardians.

This Court also notes that the SEC recommended only a single candidate—Arthur Steinberg—to Judge Owen for appointment as Receiver. In failing to propose any other candidates to the Court, the SEC effectively preordained Steinberg's appointment. In this Court's view, the practice of nominating a single candidate is unhealthy and the SEC should discontinue it. It empowers SEC staff attorneys and substitutes their judgment for the Court's. The SEC would be well advised to offer judges a choice among at least three vetted candidates. Indeed, the SEC proposed Mr. Steinberg, and only Mr. Steinberg, to be the receiver in a number of enforcement actions in this district. The SEC's benevolence allowed the Receiver and his law firm to collect approximately $29 million in six actions in this district over three years. Perhaps more competition would have redounded to the benefit of the Court and aggrieved investors.

Finally, where an estate may be relatively small and the cost of litigation relatively high, the SEC should consider a business judgment rule and require a budget from a candidate it proposes to the Court. A fundamental cost/benefit analysis could avoid awkward outcomes where a receiver's fees swallow the estate.


DISCUSSION

The amount of compensation to be awarded a court-appointed receiver is within the court's discretion. S.E.C. v. Byers, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008); see also Gaskill v. Gordon, 27 F.3d 248, 253 (7th Cir. 1994); United States v. Code Prods. Corp., 362 F.2d 669, 673 (3d Cir. 1966). The court may "consider all of the factors involved in a particular receivership." Gaskill, 27 F. 3d at 253. These factors include "the complexity of problems faced, the benefits to the receivership estate, the quality of the work performed, and the time records presented." S.E.C. v. Fifth Ave. Coach Lines, Inc., 364 F. Supp. 1220, 1222 (S.D.N.Y.

6

1973); see also Code Prods. Corp., 362 F.2d at 673 ("In allowing fees the considerations are the time, labor and skill required, but not necessarily that actually expended, in the proper performance of the duties imposed by the court upon the receivers, the fair value of such time, labor and skill measured by conservative business standards, the degree of activity, integrity and dispatch with which the work is conducted and the result obtained.") "Opposition or acquiescence by the SEC to the fee application will be given great weight." Byers, 590 F. Supp. 2d at 644 (quoting First Ave. Coach Lines, 364 F. Supp. at 122).

"In considering applications for compensation by receivers and their attorneys, the courts have long applied a rule of moderation, recognizing that 'receivers and attorneys engaged in the administration of estates in the courts of the United States . . . should be awarded only moderate compensation.'" Byers, 590 F. Supp. 2d at 645 (quoting In re New York Investors, Inc., 79 F.2d 182, 185 (2d Cir. 1935)). "Courts must exercise discretion to avoid even the appearance of a windfall." S.E.C. v. Goren, 272 F. Supp. 2d 202, 206 (E.D.N.Y. 2003); see also Byers, 590 F. Supp. 2d at 645.

Applying these considerations, this Court concludes that although the Receiver and Kaye Scholer have collected and distributed additional monies to investors during the period under consideration, the fee application is excessive. First, while the Receiver and Kaye Scholer collected $6.9 million for the estate during this period, over $5 million resulted from this Court's March 2008 decision granting the Receiver's motion for summary judgment against Saldutti, a motion which was not litigated during this fee application period.

Second, while hourly rates of $475 to $865 may be the standard rates the Receiver and Kaye Scholer charge their private fee-paying clients, the receivership was undertaken in the public interest for the benefit of defrauded investors. The Receiver and his agents serve the

Court. See Byers 590 F. Supp. 2d at 646 (finding Dewey & LeBoeuf LLP's customary billing

rates "excessive in the context of a securities receivership proceeding").  The Receiver and Kaye

Scholer have applied a 10% discount to all attorney hours, presumably to reflect a public-service

discount.  See Byers 590 F. Supp. 2d at 646 (noting that the SEC 'typically requests that its

receivers and their law firms grant some type of public service discount – typically 10% for legal

services").  However, that 10% discount still results in billing rates of $427.50 to $738.50 for

attorneys, with the majority billed at the higher end.  In addition, neither the Receiver nor Kaye

Scholer makes any distinction in this application between billing rates for legal and non-legal

services.  See Byers 590 F. Supp. 2d at 647 (receiver billed $250/hour and his counsel billed

$200/hour for non-legal services).  There is no doubt that some tasks performed by the Receiver

and Kaye Scholer attorneys—for example, maintaining a website for investors or liquidating

personal property of the estate—did not require legal expertise.  See, e.g., Goran 272 F. Supp. 2d

at 208 (noting that answering investor questions was not a task that required legal expertise).

Third, while the Receiver and Kaye Scholer also point out that the discounts

applied pursuant to the May 2009 Stipulation result in a deduction of over $453,61123 in fees

and expenses, more than half of this amount relates to matters for which they may seek

compensation at a later date.

Finally, the Receiver and Kaye Scholer seek compensation for 28% of the time

spent on this fee application.  The SEC apparently agrees to this compensation even though it

recently indicated that the fact that a receiver and his counsel did not charge for the preparation

of their fee requests was one indication that the application was reasonable.  See Byers, 590 F.

Supp. 2d at 643.

8

"[C]ourts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application. These courts have endorsed percentage cuts as a practical means of trimming fat from a fee application." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983); see also United States ex rel. Miller v. Bill Harbert Int'l. Constr. Inc., 601 F. Supp. 2d 45, 50 (D.D.C. 2009) ("the Court can also reduce fees by a reasonable amount without providing an item-by-item accounting"). Accordingly, in light of the factors discussed above, the Court applies an additional 20% deduction to the fees and awards the Receiver and Kaye Scholer $473,416.98. The Court finds the expenses to be reasonable and approves the reimbursement of $30,997.01 in expenses.

## CONCLUSION

For the foregoing reasons, the Receiver and Kaye Scholer's application for compensation and reimbursement of expenses is granted in part and denied in part. The May 29, 2009 Stipulation is approved, and will be filed simultaneously with this Memorandum and Order.

Dated: September 29, 2009
       New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*All Counsel of Record*

9